_____



SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: October 1, 2015

The Order of the Court is set forth below. The docket reflects the date entered.
_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

MARY JEAN LUSH,                                           CASE NO. 10-15774-NPO

DEBTOR.                                                   CHAPTER 13

MEMORANDUM OPINION AND ORDER GRANTING
TRUSTEE'S MOTION TO MODIFY CONFIRMED PLAN

This matter came before the Court for hearing on August 13, 2015 (the "Hearing") on the Trustee's Motion to Modify Confirmed Plan (the "Motion to Modify") (Dkt. 146) filed by Locke D. Barkley, the chapter 13 trustee (the "Trustee"), and the proposed Agreed Order Re: Motion to Modify (Dkt. #146) (the "Agreed Order") (Dkt. 159) submitted by the Trustee in the above-styled chapter 13 bankruptcy case (the "Case"). At the Hearing, Susan C. Smith ("Smith") represented the debtor, Mary Jean Lush (the "Debtor"), and G. Adam Sanford ("Sanford") appeared on behalf of the Trustee. Having fully considered the matter, the Court finds as follows:

### Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(L).

**Facts**

1. The Debtor filed a voluntary petition for relief pursuant to chapter 13 of the Bankruptcy Code[1] on November 23, 2010 (the "Petition") (Dkt. 1).

2. The Debtor filed her chapter 13 plan (the "Plan") on December 7, 2010 (Dkt. 14). The Plan provided for a sixty (60) month term and a minimum 5% pro rata distribution to unsecured creditors that filed timely proofs of claim. The Plan was confirmed on June 6, 2011 (Dkt. 68).

3. The Debtor filed an amended Schedule B-Personal Property[2] on March 30, 2015 (Dkt. 139) showing that she "gained possession of a money market account (the "Account") containing $51,926.00."[3] (Mot. to Modify at ¶ 3).

4. On April 23, 2015, the Trustee filed the Motion to Modify informing the Court, upon information and belief, that the Debtor had inherited $51,926.00. The Trustee asked the Court to require the Debtor to withdraw the inherited funds from the Account and turn them over to the Trustee for distribution to the unsecured creditors that filed timely proofs of claim.

5. The parties submitted the Agreed Order to the Court for approval on July 21, 2015. The Agreed Order provided that the Debtor would remit $26,000.00 to the Trustee for distribution to the unsecured creditors, except Sallie Mae, Inc. ("Sallie Mae"), a student loan creditor. The Debtor would pay Sallie Mae directly, and the student loan debt would not be subject to discharge under § 523(a)(8). The balance in the Account, approximately $25,826.00,

---

[1] All code sections refer to the Bankruptcy Code in title 11 of the U.S. Code unless stated otherwise.
[2] On September 8, 2015, the Debtor filed a second amended Schedule B-Personal Property (Dkt. 165). Because the second amendment took place after the Hearing, the Court refers only to the first Amended Schedule.
[3] Although the amended Schedule B-Personal Property was filed on March 30, 2015, the heading on the actual document shows that it was amended on January 10, 2013.

would remain with the Debtor. The effect of the Agreed Order would be to remove Sallie Mae from the Plan so that it has no assurance that it will be paid from the funds kept by the Debtor.

6. At the Hearing, Sanford deferred to Smith, who argued that because the Debtor is "69-years-old, frail, and unemployed," the Agreed Order should be signed. She stated that the Debtor is in poor health and rents a home near her daughter. She argued that Sallie Mae and the remaining general unsecured creditors somehow would receive the same treatment because student loans are nondischargeable. At the end of the Hearing, the Court instructed the parties to submit legal authority supporting the Agreed Order's treatment of Sallie Mae.

7. On September 3, 2015, Sanford submitted a brief in the form of a letter in support of the Agreed Order (the "Letter").[4] Sanford argued that student loans are distinguishable from general unsecured debt because they are nondischargeable. Sanford concluded, however, that under the unfair discrimination test set forth in *Chacon v. Bracher (In re Chacon)*, 202 F.3d 725, 726 (5th Cir. 1999), removing Sallie Mae from the Plan "should be considered unfair discrimination." (Letter at 2). Sanford noted that absent the discrimination against Sallie Mae, general unsecured claims would not be paid in full. (*Id.*) He further argued that the discrimination would allow the Debtor to pay her student loans post-discharge. (*Id.*)

8. On September 7, 2015, Smith submitted a brief (the "Brief"), essentially reneging the Agreed Order. Smith explained that after the Debtor paid the required taxes, she received $51,826.00 from the decedent's assets, $21,276.29 of which was directly attributable to the decedent's life insurance policy. She stated that the Debtor no longer agreed to use any part of her inherited assets to fund the Plan. Smith argued that at least $50,000.00 of the funds from the Account are exempt under Mississippi's wildcard exemption. She argued in the alternative that

---

[4] Sanford did not file the letter on the docket.

the proceeds of the decedent's life insurance policy, $21,276.29, should be exempt from the Debtor's bankruptcy estate (the "Bankruptcy Estate") altogether under MISS. CODE ANN. § 85-3-11. Apparently, the Debtor intends to retain the entire sum of the Account to pay for health expenses due to complications from diabetes.

## Introduction

After the Plan was confirmed, the Debtor inherited $51,826.00. The Trustee filed the Motion to Modify so that he could distribute the money to all general unsecured creditors, including Sallie Mae, on a pro rata basis. Then, the parties executed the Agreed Order. After the Hearing, the Debtor submitted the Brief, reneging the Agreed Order and stating that she would keep all of the money for herself. The issue before the Court is whether the entire sum of the Account is property of the Bankruptcy Estate subject to pro rata distribution to all of the Debtor's unsecured creditors, including Sallie Mae.

## Discussion

Both parties initially argued that the Agreed Order does not unfairly discriminate against Sallie Mae. When Smith filed the Brief, however, she abandoned that argument and reneged on the Agreed Order. Either way, the Debtor's student loans have been outstanding for twenty-five to thirty years, and she seeks to delay repayment even longer. The Debtor now asks this Court to exempt the entire sum of the Account from the Bankruptcy Estate. Alternatively, she asks the Court to exempt at least the life insurance proceeds pursuant to MISS. CODE ANN. § 85-3-11. The Court will begin by determining whether the Agreed Order is binding and enforceable. Next, the Court will determine whether any amount of the Debtor's inheritance is exempt from the Bankruptcy Estate. Finally, the Court will determine whether the Motion to Modify should be granted.

I.   **Enforceability of the Agreed Order**

After the parties executed the Agreed Order modifying the Plan, Smith filed the Brief arguing that the Debtor would not honor the agreement because she needed to keep all of the money to pay medical expenses. The Agreed Order is binding on the Debtor despite her attempt to renege.

   A. **Agreed Order Binding**

The Fifth Circuit Court of Appeals has always looked positively upon settlement agreements as a "favored means of resolving disputes." *Hyperion Found., Inc. v. Academy Health Center, Inc. (In re Hyperion Found., Inc.), Adv. Proc. 09-05043-NPO,* 2009 WL 3633878, *3 (Bankr. S.D. Miss. Oct. 27, 2009) (citing *Thomas v. La.*, 534 F.2d 613, 615 (5th Cir. 1976)). Additionally, it is clear that "settlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final, and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. Via Metro. Transit Sys.,* 802 F.2d 126, 128 (5th Cir. 1986) (citing *Thomas,* 534 F.2d at 613) and *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967)). Settlement agreements may not be repudiated "[a]bsent fraud, deception, coercion or overarching." *Id.* at 129 (citing *Strange v. Gulf & S. Am. Steamship Co., Inc.*, 495 F.2d 1235 (5th Cir. 1974)).

In light of these principles, the bankruptcy court has the inherent power to not only recognize and encourage settlements, but also to enforce such agreements. *Hyperion Found., Inc.,* 2009 WL 3633878, at *3 (citing *Bell v. Scheznayder*, 36 F.3d 447, 449 (5th Cir. 1994)). Such power to recognize and enforce settlements supports what the Fifth Circuit has described as "three important goals encouraged by our judicial system: voluntary settlements of disputes, the

enforcement of agreements according to the objective intent of the parties, and an end to litigation." *Bell,* F.3d at 450.

Unless there is a federal jurisdiction issue involved in the creation of the agreement, a federal court must determine whether an agreement was reached under applicable state law. *Resolution Trust Corp. v. Accardo*, No. 93-0976, 1995 WL 479720 (E.D. La. Aug. 11, 1995). The same holds true in the bankruptcy court's enforcement of settlements. *See, e.g., Equity Mgmt. II Corp. v. Carroll Canyon Assocs. (In re Carroll Canyon Assocs.)*, 73 B.R. 236, 238 (S.D. Miss. 1987). The Fifth Circuit addressed a bankruptcy trustee's motion to enforce the terms of a settlement agreement in *Houston v. Holder (In re Omni Video, Inc.),* 60 F.3d 230, 232 (5th Cir. 1995), finding that because bankruptcy law does not address the validity of settlement agreements, courts should look to state law in determining enforceability.

To that end, Mississippi recognizes that settlements are contracts, which are enforceable according to their terms. *Parmley v. 84 Lumber Co.,* 911 So. 2d 569, 572 (Miss. Ct. App. 2005); *Middlesex Banking Co. v. Field*, 37 So. 139, 149 (Miss. 1904) (Truly, J., specially concurring). Based on the foregoing law, this Court applied Mississippi law in determining whether the parties entered into a contract, and, if so, whether it should be enforced in *Hyperion Foundation, Inc.,* 2009 WL 3633878 at *6. It is "elementary" that in order for there to be a settlement, the minds of the parties must meet as to the material terms of the agreement. *Id. (*citing *Parmley*, 911 So. 2d at 572 (quoting *Hastings v. Guillot,* 825 So. 2d 20, 23 (Miss. 2002))). No "meeting of the minds" can occur until the terms of an offer are accepted. *See, e.g., In re Estate of Davis*, 832 So. 2d 534, 537 (Miss. Ct. App. 2001). This Court looked to the parties' actions in determining that a "meeting of the minds" had occurred so as to render the settlement agreement enforceable in *Hyperion Foundation, Inc.*, 2009 WL 3633878 at *7.

Under Mississippi law, it appears evident that there was a "meeting of the minds" when Smith signed the Agreed Order. The Trustee initially filed the Motion to Modify requesting that all of the money be remitted for payment to the unsecured creditors. Approximately three months later, the parties submitted the Agreed Order. In order for the parties to enter into this agreement, a "meeting of the minds" was required. The Debtor presumably read the Motion to Modify and contacted the Trustee. The parties negotiated and then executed the Agreed Order. After submitting the Agreed Order and arguing in support of its validity at the Hearing, the Debtor filed the Brief, changing her position and arguing that she should keep all of the money for herself. Despite this apparent change of heart, the Court finds that there is no evidence that the Trustee has released the Debtor from the agreements contained in the Agreed Order. Therefore, the Debtor is bound by the parties' agreement.

### B. Agreed Order Not Approved

Despite the fact that the Debtor is bound to the Agreed Order, the Court nonetheless finds that it should not be approved because it unfairly discriminates against Sallie Mae. Pursuant to § 105(a), no provision of the Bankruptcy Code prevents bankruptcy courts from *sua sponte* "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Notwithstanding the absence of an objection, the Court has the authority, and even the obligation, to deny confirmation of any proposed plan that does not conform to the requirements of the Code. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010). Accordingly, this Court may determine whether the Agreed Order unfairly discriminates against Sallie Mae, even though Sallie Mae has not objected or appeared.

A chapter 13 plan may be modified pursuant to § 1329(a)(1), but the requirements of § 1322(b) apply to the modification. 11 U.S.C. § 1329(b)(1). Section 1322(b)(1) allows a plan to designate a class or classes of unsecured claims as long as it does not unfairly discriminate against one of those classes. 11 U.S.C. § 1322(b)(1). This Court held that discrimination based solely on the nondischargeability of a claim is generally considered to be unfair, but "there is no provision in the Code that defines the parameters of fairness in the context of nondischargeable debts." *Id*. at 8. *In re Cooper*, No. 11-52095-KMS, slip op. at 7. (Bankr. S.D. Miss. Aug. 3, 2012) (Opinion of Olack, J.). Additionally, the Debtor has the burden to demonstrate that there is no unfair discrimination. *Id.*

While the case law regarding unfair discrimination based on the dischargeability status of debt is sparse, the Fifth Circuit has "provided guidance regarding unfair discrimination in general." *Id*. (citing *In re Taylor*, No. 11-92996-NPO, 2011 WL 4962946, at *2 (Bankr. S.D. Miss. Oct. 19, 2011). As this Court noted in *In re Cooper*, two Fifth Circuit cases applying the unfair discrimination test to the preferential treatment of cosigned consumer debt and three recent bankruptcy cases applying the test to the *preferential* treatment of student loan debt were useful to the Court's analysis. *Id*. Because there are no cases directly on point, those cases are helpful to the Court's analysis in this Case as well.

**1. Cosigned Consumer Debt**

This Court held in *In re Cooper* that "[d]ifferences in treatment are not discriminatory if they rationally further a legitimate interest of the debtor and do not disproportionately benefit the cosigner, *e.g.* by reimbursing interest where none is due or reimbursing more than the actual amount of the cosigned debt." *In re Cooper*, No. 11-52095-KMS, slip op. at 8-9. For example, in *In re Chacon*, the debtor's plan "proposed to pay the cosigned debt in full, with 12% interest,

before any distributions were made to the general unsecured creditor class." *In re Chacon*, 202 F.3d at 726-727. The Fifth Circuit denied confirmation because the debtor presented no evidence or justification for the "high and preferential interest rate." *Id*.

In *In re Ramirez*, 204 F.3d at 595, the Fifth Circuit revisited the issue. The debtor in that case proposed a plan to repay a cosigned loan in the amount of $844.00 plus 12% interest. *Id*. Once the debt was paid in full, the trustee would begin distributing the plan payments to the general unsecured creditors. *Id*. If the money designated for paying the cosigned consumer debt and interest were distributed equally among all the unsecured creditors, distribution would increase by 5%. *Id.* at 596. Accordingly, the Fifth Circuit held that the facts were analogous to *In re Chacon* and denied confirmation of the plan. *Id*.

In those cases, the Fifth Circuit did not allow the debtor to treat cosigned debt differently because the disproportionate treatment constituted unfair discrimination. Because the debtors in those cases arbitrarily treated the cosigned debt preferentially, the Fifth Circuit denied confirmation. These cases demonstrate that the Fifth Circuit will scrutinize disproportionate treatment of unsecured claims to determine whether there is unfair discrimination and will refuse to confirm or allow modification of a plan if it unfairly discriminates against a creditor.

### 2. Preferential Treatment of Student Loan Debt

As this Court noted in *In re Cooper,* other bankruptcy courts in the Fifth Circuit have recently considered whether a chapter 13 debtor may treat student loan debt *preferentially.* In *In re Simmons*, 288 B.R. 737 (Bankr. N.D. Tex. 2003), the bankruptcy court reviewed four plans for confirmation, each of which treated student loan debt more favorably than all other general unsecured debt. In determining whether the plans' proposed treatment of student loans constituted unfair discrimination, the Texas bankruptcy court examined the legislative history

and applied principles of statutory construction. *Id.* at 748. The court concluded that, "[h]ad Congress intended to allow preferential treatment of nondischargeable claims of any sort surely [the sections] would have said so." *Id*. Accordingly, the court found that "the Code offers no exception that would permit a chapter 13 debtor to discriminate . . . in favor of a nondischargeable student loan to the detriment of other unsecured creditors." *Id*. at 749. That case thus dispels the Debtor's argument that student loans are distinguishable based on the fact that they are nondischargeable.

In *In re Boscaccy*, 442 B.R. 501, 503 (Bankr. N.D. Miss. 2010), three debtors in separate bankruptcy cases proposed to treat their student loans as long-term debt. They argued that this was permitted under § 1322(b)(5), which allows a debtor to cure a default and remain current when the last payment is "due after the date on which the final payment under the plan is due." *Id.* The debtors argued that § 1322(b)(5) rendered the unfair discrimination limitation inapplicable. *Id.* Although the *Boscaccy* court believed the classification of student loans as "nondischargeable" indicated a congressional intent that such debts be repaid, the court concluded that the long-term debt provision in § 1322(b)(5) did not supersede the unfair discrimination provision in § 1322(b)(1). *Id.* In other words, treating student loans as long-term debt does not give a debtor the authority to treat them differently.

The bankruptcy court considered whether a plan unfairly discriminated where the debtor agreed to pay student loan creditors $32,400.00 over the life of the plan but general unsecured creditors would each receive a pro rata share of $12,449.40 in *In re King*, 460 B.R. 708, 710 (Bankr. N.D. Tex. 2011). The court concluded that, although the debtor separately classified student loan claims, there was no unfair discrimination. *Id.* at 713. In that case, "each non-student loan creditor will receive a pro rata share equal to or greater than what it would have

received were there no discrimination at all." *Id*. at 713. On the other hand, the Debtor in this Case proposed to pay Sallie Mae nothing at all through the Plan.

### 3. Debtor's Student Loan Debt

In this Case, the Agreed Order proposes to unfairly discriminate against Sallie Mae. Instead of requiring the Debtor to remit the entire $51,826.00 to the Trustee for distribution to all unsecured creditors, the Agreed Order provides that the Debtor will only remit $26,000.00 to the Trustee and excludes Sallie Mae from the Plan. There is no assurance the Debtor will actually use the remaining money to pay Sallie Mae outside of the Plan. Indeed, Smith stated that the Debtor wants to keep the entire sum of the Account "not to pay student loans but to pay the costs incurred by her, directly related to her health." (Br. at 5).

The previously discussed Fifth Circuit and bankruptcy cases held that a plan cannot arbitrarily discriminate between classes of unsecured creditors, which is exactly what the Debtor is attempting to do here. Sallie Mae filed a proof of claim to collect the Debtor's outstanding student loan balance of $44,323.16 on behalf of Texas Guaranteed Student Loan Corporation. The Debtor incurred the student loans between 1986 and 1990, twenty-five to thirty years ago. The Brief indicated that, until 2010, the Debtor was making $7,600.00 a month, or $91,200.00 a year. (Br. at 4). Further, the Debtor and her husband owned two homes. (*Id*.) These facts indicate that the Debtor was capable of making payments on her student loans during at least some of the twenty-five to thirty years since incurring the debt.

Not only did the Debtor have the ability to make payments on her student loans prior to 2010, her actions after the Motion to Modify was filed indicate a lack of a good faith intent to repay her student loans. If the entire sum of the Account was paid to the Trustee for a pro rata distribution to all of the unsecured creditors, including Sallie Mae, the Debtor would have less

nondischargeable debt after the Plan is concluded. Instead, what the Debtor proposed to do is to pay her dischargeable debts in full while making no payments towards the nondischargeable debts. This means that the entire balance of her nondischargeable student loan debt would remain after the Case is closed.

At the Hearing, Smith argued that the Agreed Order actually garners the same result as a pro rata distribution to all of the unsecured creditors because Sallie Mae will be paid directly. In fact, she argued that the Agreed Order affords Sallie Mae *better* treatment because it allows for the other unsecured creditors to be paid in full through the Plan and for Sallie Mae to be paid in full directly. Nevertheless, it is unfair discrimination to pay the general unsecured creditors now, but make Sallie Mae wait even longer. If the Debtor had acted in good faith, she would want *more* money to go toward payment of the nondischargeable debts so that less remains after the Case is closed. In other words, it is more financially beneficial for the Debtor to pay the nondischargeable debt rather than the dischargeable debt with the inherited money.

As the Fifth Circuit noted in *In re Chacon*, differences in treatment are not discriminatory if they further a legitimate interest of the debtor. Smith argued that the Debtor's interest in treating the student loans differently is her need for money to pay medical bills. Essentially, she argued that the Debtor does not have enough money to pay all of the unsecured creditors *and* her medical bills. But this argument overlooks the current juncture of the Plan. The Plan was confirmed on June 6, 2011. Therefore, it will be completed in less than a year. Once the Trustee makes the pro rata distribution to all unsecured creditors, including Sallie Mae, the Case will be closed, the Debtor will be granted a discharge, and the student loan debt will be reduced. Instead of making monthly payments through the Plan, the Debtor will have that money available to pay her medical bills.

This Court and the Fifth Circuit have denied confirmation of plans that arbitrarily treat one unsecured creditor's debt disproportionately. The Court holds that the Agreed Order proposes to unfairly discriminate against Sallie Mae. The nondischargeable nature of student loan debt alone does not give rise to a basis for disproportionate treatment. Treating that debt differently based on nondischargeability is itself discriminatory treatment. Accordingly, the Court will not enter the Agreed Order.

**II.     Motion to Modify**

The crux of Smith's argument is that the Debtor's inheritance is exempt under Mississippi law and should not be distributed to unsecured creditors. Once a debtor's plan has been confirmed pursuant to § 1325, the debtor may modify the plan under § 1329. Modification is allowed prior to completion of a plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329.

According to § 1306, inherited property becomes property of the estate if it is acquired before the case is closed, converted, or dismissed, whichever occurs first.[5] Under § 1327(b), the confirmation of a plan "vests all of the property of the estate in the debtor" unless the plan or confirmation order provides otherwise. The Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders (the "Confirmation Order") (Dkt. 68) provides that all of the Debtor's property is to remain property of the estate and will only vest in the debtor upon dismissal, discharge, or conversion. Therefore, because the Debtor acquired the decedent's assets after she filed for bankruptcy but before the Case was closed, converted, or

---

[5] Section 541 provides that, in chapter 7 cases, inherited property only becomes property of the estate if it is acquired within 180 days of filing for bankruptcy. However, § 1306(a)(1) provides that property of the estate includes inherited property that is acquired before the case is closed, converted, or dismissed. Property of a chapter 13 estate therefore captures bequests, devises, and inheritances without regard to whether it was acquired, devised, or inherited within 180 days of the petition. *In re Castillo*, 508 B.R. 1, 6 (Bankr. W.D. Texas 2014).

dismissed, and because the Confirmation Order provides that the Debtor's property remains property of the estate, the inherited assets are property of her Bankruptcy Estate unless an exemption applies.

### A. Wild Card Exemption

Smith argued that $50,000.00 of the proceeds from the decedent's assets should be exempt pursuant to Mississippi's wildcard exemption statute, MISS. CODE ANN. § 85-3-1(h). The exemption applies to property valued at $50,000.00 and is "available to any Mississippi resident who is seventy (70) years of age or older." By Smith's own admission, the Debtor is only sixty-nine (69) years old, not seventy (70). At the time the Debtor filed the Petition, she was sixty-four (64) years old. In spite of the Debtor's age, Smith argued that because the Debtor is within a year of the exemption, "[t]o deny [her] the benefit of age because she has not attained an arbitrary mark seems incredibly harsh." (Br. at 6).

Smith further argued that under § 105, the Court may apply the wildcard exemption to the Debtor, although she is not 70, "to prevent an abuse of process." (Br. at 6). While § 105 does provide that the Court may issue an order, process or judgment to prevent an abuse of process, the Supreme Court held that "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014). The Supreme Court further held that "it is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Id*. (citing 2 COLLIER ON BANKRUPTCY ¶ 105.01[2] (16th ed. 2013)). The Supreme Court has long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Id*. (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

Although the Bankruptcy Code provides a list of exemptions, it allows states to "opt out" and choose to only apply state law. 12 COLLIER ON BANKRUPTCY Intro.02[2] (16th ed. 2013). Mississippi has "opted out" of the federal exemptions scheme. MISS. CODE ANN. § 85-3-1. Thus, Mississippi debtors are permitted to exempt property only under Mississippi state law, or federal law other than § 522. 12-MS COLLIER ON BANKRUPTCY MS.syn (16th ed. 2013). Accordingly, the Bankruptcy Code has identified state law as controlling in opt-out states, like Mississippi, and the bankruptcy court cannot contravene these statutory provisions.

The Mississippi wildcard exemption is plain: it only applies to debtors who are 70 years of age or older. The Fifth Circuit has applied the "snapshot" approach in determining whether property is exempt, meaning bankruptcy courts should focus on the status of property on the date of filing. *Zibman v. Tow (In re Zibman),* 268 F.3d 298, 302 (5th Cir. 2001) (citing *Owen v. Owen*, 500 U.S. 305, 308 (1991)). Under the Bankruptcy Code, "the commencement of a bankruptcy case creates an estate comprising all legal and equitable interests in property (including potentially exempt property) of the debtor *as of that date.*" *Id.* (emphasis added). The Debtor is 69 years old now, but when she filed the Petition on November 23, 2010, she was 64-years-old, well below the 70-year-old age requirement of MISS. CODE ANN. § 85-3-1(h). This Court cannot contravene the statutory mandate by applying the exemption to debtors under the age of 70. The plain language of MISS. CODE ANN. § 85-3-1(h) is clear and there is no "close enough" exemption under Mississippi Law. Therefore, because the Debtor is not 70, the wildcard exemption does not apply to her.

### B. Life Insurance Proceeds Exemption

Pursuant to MISS. CODE. ANN. § 85-3-11, all proceeds of a life insurance policy "shall inure to the party or parties named as the beneficiaries thereof, *free from all liability for the debts*

*of the person whose life was insured . . .*" *Id.* (emphasis added). Although Smith argued that the $21,276.29 in life insurance proceeds are exempt from the Debtor's Bankruptcy Estate under this statute, MISS. CODE ANN. § 85-3-11 applies only to debts of a *decedent*. The Mississippi Supreme Court held in *Goza v. Provine,* 140 Miss. 315 (1925) that the exemption only applies to debts of the insured, not debts of the beneficiary. Although the Court was interpreting the prior life insurance exemption statute, that version was even broader than the current version. See *Equitable Life Assurance Co. v. Union Plantesr Bank of N.E. Miss., (In re Jordan)*, 276 B.R. 434 (Bankr. N.D. Miss. 2000).

Because MISS. CODE ANN. § 85-3-11 applies to the debts of the decedent, not the beneficiary, proceeds from the life insurance policy would be exempt from the decedent's bankruptcy estate, not from the Debtor's. See *In re Henderson*, 167 B.R. 67, 72 (Bankr. N.D. Miss. 1993) (applying exemption to policy holder's estate where policyholder claimed cash surrender values of policies); *Lackey v. Lackey*, 691 So. 2d 990, 993 (Miss. 1997) (stating that the exemption applies to the decedent's estate). Therefore, MISS. CODE ANN. § 85-3-11 does not apply to the Debtor. Accordingly, the life insurance proceeds are property of the Bankruptcy Estate.

## Conclusion

The Court holds that the proposed treatment of Sallie Mae in the Agreed Order would constitute unfair discrimination. Additionally, the funds in the Account are not exempt. Therefore, the Debtor's entire inheritance, $51,826.00, is property of the Bankruptcy Estate pursuant to 11 U.S.C. § 1306 and the Confirmation Order. The Debtor shall remit the entire sum of the Account to the Trustee for distribution to all of the unsecured creditors on a pro rata basis.

Accordingly, the Motion to Modify shall be granted and the Plan shall be amended to reflect the $51,826.00 inheritance and the distribution to all of the unsecured creditors on a pro rata basis.

IT IS, THEREFORE, ORDERED that the Motion to Modify is hereby granted.

IT IS FURTHER ORDERED that the Agreed Order is not approved.

IT IS FURTHER ORDERED that the Debtor shall withdraw $51,826.00 from the Account and remit it to the Trustee for distribution, less the Trustee's statutory fees, to all unsecured creditors with timely filed claims.

##END OF ORDER##